# Charleston.

ROBERT W. RENICK *et al. vs.* JOSEPH H. CORRELL, ADM'R.

### January Term, 1871.

1. A party cannot take advantage, in the appellate court, of the fact that there was no issue made up on special pleas, if the pleas do not present a bar to the plaintiff's action; as any issue that might have been had upon them, would have been immaterial and unavailing.

2. A plea given, which is held to be too indefinite and uncertain in form, and would allow too much latitude of defense.

3. A plea is held to be bad, which sets up for defense, that a bond given in settlement or compromise of another bond, that was to be paid in confederate money, for a less sum, and in the settlement of the original debt, is illegal and void. *Jarrett vs. Nichol, infra.*

4. If the evidence is contradictory, the court below is not bound to certify the facts or the evidence, further than is sufficient to show the pertinency of an instruction predicated on it.

5. The following instruction is held not to be erroneous: "That if they believed, from the evidence, that the bond in the declaration mentioned was given by the defendants to the plaintiff for lawful money, borrowed by the defendant Robert W. Renick of the plaintiff, then, although the said money was intended to be applied, and was afterwards in fact applied, by the said defendant in discharge of a confederate debt due from said defendant to S. C. Ludington, and although the plaintiff, at the time he loaned the money to the said defendant, was aware of the purpose to which he intended to apply it, still the jury ought to find for the plaintiff, unless they further believed, from the evidence, that the loan from the plaintiff to said defendant was effected by collusion and fraud between the plaintiff and said Ludington."

Suit brought in Greenbrier county to February rules, 1868, by Joseph H. Correll, administrator of William Ren-

ick, against Robert W. Renick and B. F. Renick, on a bond for 4,000 dollars, dated April 12th, 1865.

Defendants pleaded payment, and also filed two special pleas, to which latter pleas there does not appear to be any replication. The first plea was admitted here to be defective, and was not insisted on. The second plea alleged that in 1863, the defendant R. W. Renick traded certain lands with one Ludington, and so-called money of the confederate states of the amount of 20,000 dollars, and that there was a lien on the land traded by Ludington to R. W. Renick, in favor of W. Renick, the plaintiff's decedent, in discharge of which Ludington had executed a note to the plaintiff; that afterwards R. W. Renick and Ludington rescinded and annulled the contract and trade of lands between them, and mutually placed each other in the same position which they had occupied, except that the 20,000 dollars was not refunded or redelivered, and that in consideration of R. W. Renick having received from Ludington so many confederate treasury notes, as purported to be of the value of and to the amount of 20,000 dollars, and for no other consideration, the defendants executed to the plaintiff the bond sued on; and that the so-called confederate treasury notes were illegal currency, &c., and, therefore, the supposed bond was null and void.

The jury found for the plaintiff, and judgment was rendered thereon, at the June term, 1869. During the trial, as appears by the bill of exceptions taken by the defendants, the plaintiff introduced the bond, "and proved it to have been executed for good and lawful money, borrowed by the defendant R. W. Renick, of the plaintiff."

The bill of exceptions further showed that "on the part of the defendants, evidence was introduced, tending to show that the money thus borrowed by the said defendant of the plaintiff, was intended to be applied, and was in fact applied, by the said defendant, in discharge of a confederate debt due from the said defendant to one S. C. Ludington, and also tending to show that at the time the plaintiff loaned

said money to said defendant he, the plaintiff, knew of the purpose to which the defendant intended to apply the same. On the part of the plaintiff, evidence was also introduced, tending to show that the debt due from said defendant to said Ludington, was not founded on the consideration of confederate money, and that the plaintiff did not know, at the time he loaned it, to what purpose the said defendant intended to apply the same. The evidence being conflicting, the court is unable, and therefore declines to certify the facts of the case further than as above stated, which, in the opinion of the court, fairly presents the only objection taken by the defendant's counsel to the ruling of the court as hereinafter stated."

"After the evidence had been closed on both sides, the court instructed the jury that if they believed, from the evidence, that the bond in the declaration mentioned was given, by the defendants to the plaintiff, for lawful money borrowed by the defendant, R. W. Renick, of the plaintiff, then, although the said money was intended to be applied, and was afterwards in fact applied, by the said defendant, in discharge of a confederate debt due from said defendant to S. C. Ludington, and although the plaintiff, at the time he loaned the money to said defendant, was aware of the purpose to which he intended to apply it, still the jury ought to find for the plaintiff, unless they further believed, from the evidence, that the loan from the plaintiff to said defendants was effected by fraud and collusion between the plaintiff and Ludington."

The foregoing items of evidence and instructions comprised the matter in the only bill of exceptions in the record.

Defendants brought the case here for review.

Hon. N. Harrison, Judge of the circuit court of Greenbrier, presided on the hearing of the cause.

*J. W. Harris* for the plaintiffs in error.

*Dennis* and *Boggess* for the defendant in error.

Mr. Dennis said: The third special plea, on which the defendants mainly relied, averred, in substance, that the defendant Robert W. Renick, was indebted to one S. C. Ludington, in the sum of 20,000 dollars, confederate money, and that the bond in the declaration mentioned was executed by the defendants to the plaintiff, for the said 20,000 dollars, due in confederate money, from said Robert W. Renick to said Ludington, and for no other consideration whatever. Is this plea, or any of the pleas, sustained by the proof? I think not. The bill of exceptions states, that the "bond was proved to have been executed for good and lawful money, borrowed by the defendant R. W. Renick, of the plaintiff." The defendants undertook to prove, (but in this they failed,) that the money thus borrowed from the plaintiff was applied in discharge of a confederate debt due from said Robert W. Renick to Samuel C. Ludington, and that the plaintiff, at the time he loaned the money, knew the purpose to which the said defendant intended to apply the same.

The plaintiff introduced proof to contradict both of these statements; that is, that the debt due to said Ludington was not a confederate debt, and that the plaintiff did not know to what purpose the said Renick intended to apply the money he borrowed from the plaintiff. The evidence, as the court certifies, was conflicting. Hence, it cannot be successfully maintained that the bond, in the declaration mentioned, was executed for confederate money, or, if executed for good money, that the plaintiff knew that it was intended to be applied to the discharge of a confederate debt; nor is it shown that the debt due from Robert W. Renick to S. C. Ludington, was a confederate debt. Hence, I say from the facts certified, that the defendants have signally failed to prove any of their pleas. The bond shows, upon its face, that it was executed for 4,000 dollars, lawful money; and this 4,000 dollars was credited on a bond of 8,763 dollars and 12 cents, due to the plaintiff, as administrator of William Renick, from S. C. Ludington and F. H.

Ludington. The Ludingtons owed the plaintiff 8,763 dollars and 12 cents; the two Renicks, (Robert W. and B. F.,) owed Ludington 4,000 dollars—all good money—in no wise connected with the late confederacy. By an agreement between Correll and the Renicks, he gave Ludington a credit for 4,000 dollars, on the bond of 8,763 dollars and 12 cents, and the Renicks executed their bond to him (Correll) for the 4,000 dollars.

The debt due from the Ludingtons to Correll, as is stated in the plea, was for the balance due upon a tract of land sold by William Renick, in his life-time. This sale occurred long before the late war.

Now to the instructions.

Grant, for the sake of the argument, that all the defendants contended for, is fully proven, (which, however, is denied, except that the bond was given for lawful money,) to wit:

1st. That the bond was given for lawful money, borrowed from the plaintiff by Robert W. Renick. (This is true.)

2nd. That the money so borrowed was intended to be applied, and was, in fact, applied by said Robert W. Renick, to the discharge of a confederate debt due from him to Samuel C. Ludington.

3rd. That the plaintiff knew at the time he loaned the money, the purpose for which it was borrowed; still the jury ought to find for the plaintiff, unless they also believe that the loan from the plaintiff to said Robert W. Renick, was effected by a collusion and fraud, between the plaintiff and said Ludington.

Suppose such a state of facts had been proven, what is the law?

Is the payment of a confederate debt, or a debt due in confederate money, such a vicious, illegal, immoral and corrupt transaction, that one who loans good money to pay such a debt cannot recover it by suit?

No law of the national government; no act of the reorganized State government of Virginia; no statute of West

Virginia, ever made it a penal offense to receive, or pass, or circulate these notes. No law of either the general or State government, ever made it a penal offense to pay a confederate debt. On the contrary, the supreme court of the United States, in the case of *Thorrington* v. *Smith & Hartly*, decided that contracts to be discharged in confederate money, made between persons residing within the confederate lines, could be enforced in the courts of the United States, and the supreme court of this State decided last winter, in the case of *Washington's Executor*, v. *Burnett*, that where a creditor, in good faith, voluntarily received confederate notes in discharge of a debt, that it was a good payment, and the claim was satisfied.

A person who loans money to bet on an election, cannot recover it by a suit. 2 Gratt., 257.

A person who loans money to bet at cards, cannot recover it by suit. Why? Because to bet on elections, or to bet at cards, is a penal offense. They are illegal and immoral acts. Such acts are contrary to public policy. Not so in paying a confederate debt; they, on the contrary, are frequently honest and just, and sustained by the highest and broadest principles of morality. Every principle of moral honesty and correct dealing between man and man, would frequently require the payment of these confederate debts. There is a high moral, if not a legal obligation.

Whilst during the war, it was contrary to public policy to issue and circulate these notes for the purpose of aiding the late rebellion, I know of no public policy, now that the war is over, and the rebellion crushed, which would prevent an honest man from paying an honest and just debt, though originally due in confederate money. If not illegal and immoral to pay a confederate debt, can it be immoral, illegal or contrary to public policy, to loan good money to pay such a debt?

The case of *Armstrong* v. *Toler*, 11 Wheaton, 258, is directly in point. That case decides, "if the illegal act is not the consideration of the contract, and is entirely discon-

nected from it, the contract is valid, though the occasion for making the contract arose out of the existence of the illegal act."

In the case at bar, the illegal act (if any) was paying the confederate debt to Ludington. The consideration of the bond in suit was the 4,000 dollars, lawful money, borrowed by the defendant from the plaintiff, and was entirely disconnected from the illegal act, though the occasion for executing the bond may have arisen out of the existence of the illegal act.

Chief Justice Marshall says: "The opinion is, that a new contract, founded on a new consideration, although in relation to property respecting which there had been unlawful transactions between the parties, is not itself unlawful."

In this case, the suit was between the parties connected with the original illegal consideration. In the case at bar, the suit is between different parties. Correll (the plaintiff) had no earthly connection with the confederate transaction between Ludington and Renick; and whilst by the common law, transactions may be illegal and void, as *between the parties connected with them*, yet this illegal taint is all lost as these contracts become the basis of collateral undertakings between different parties.

On p. 274, the Chief Justice says: "In most of the cases cited by the counsel for the plaintiff in error, the suit has been brought by a party to the original transaction, or on a contract so connected with it as to be inseparable from it."

Without quoting further from this opinion of Chief Justice Marshall, I ask this court carefully to examine it, and I think it will be found conclusive of this case.

The case of *McBlair* v. *Gibbes*, 18 Howard, 232, bears upon this case. An association in Baltimore was organized for the purpose of furnishing supplies and fitting out an expedition under General Mina against Mexico. An assignment of a share, in this company, for a valuable consideration, was held valid.

Nelson, J. Whilst the contract with General Mina was

illegal, "the transaction out of which the assignment to Oliver arose, was uninfected with any illegality. The consideration paid, was not only legal, but meritorious. * * * *. The assignment was subsequent, collateral to, and wholly independent of, the illegal transaction upon which the principal contract was founded."

"In *Faikney* v. *Reynous*, 4 Burr, 2064, the plaintiff and one Richardson, were jointly concerned in certain contracts prohibited by law, in which a loss was sustained, the whole of which was paid by the plaintiff, and a bond was given for securing the repayment of Richardson's proportion of the loss. To a suit on this bond, the defendant pleaded the statute prohibiting the original transaction, but the court held on demurrer, that the plaintiff was entitled to recover." *Tracy* v. *Talmage*, 14 New York; 4 Kernan, p. 167–8–9.

The supreme court, in *Rawdon* v. *Toby*, 11 Howard, 520, confirms these general principles. Justice Grier, p. 521.

See also, *Brooks* v. *Martin*, 2 Wallace, 70, in which it was held, that after a partnership contract, confessedly against public policy, has been carried out and money contributed by one of the partners has passed into other forms, a partner in whose hands the profits are, cannot refuse to account for, and divide them, on the ground of the illegal character of the original contract. The difference between enforcing illegal contracts and asserting title to money which has arisen from them, is distinctly taken, says Justice Miller, in *Teant* v. *Elliot*, 1 Bosanquet & Puller, 3; and *Farmer* v. *Russell*, *Id.*, 29; and recognized and approved by Sir William Grant, in *Thompson* v. *Thompson*, 7 Vesey, 473. See *Steele* v. *Curle*, 4 Dana, 387–8.

BERKSHIRE, *President.*

The first objection relied on for reversing the judgment complained of, is the failure to make up the issues on the two special pleas filed by the defendants.

Whether this be error, of which the appellants can avail themselves here, must depend on the question whether the

pleas, or either of them, present a bar to the plaintiff's action. For if they do not, and are bad in substance, then it is clear that the defendants were not injured by such omissions; as any issue that might have been had upon them, would have been immaterial and unavailing.    *Caperton* v. *Martin, infra.*

If taken to be true then, do the pleas, or either of them, present a valid defence or bar to a recovery by the plaintiff?

While the record shows that only two special pleas were filed, a third one is copied into it.    Taking them in the order in which they are found on the record, we are required to consider only the first two of them.

As to the first: It was admitted to be bad by the counsel for the defendants and appellants, and properly so, as it is clearly defective in substance, and presents no valid defence. In form and substance, I think the second is equally defective.    It is too indefinite and uncertain in form, and would allow too much latitude of defence, without giving to the plaintiff notice of the *precise* defence that would be made under it.    It moreover, in substance, asserts the proposition that, although the defendants might have been indebted to the plaintiff or his intestate, in any sum, to be paid in confederate money, and settled or compromised such indebtedness, by giving their bond for a less sum, in settlement of the original debt, that such latter bond is also illegal and void.    It, therefore, in my judgment, involves the same principle and defence that was sought to be made, and was overruled in the case of *Jarrett* v. *Nichol, infra.*

The next objection suggested is, that the court erred in refusing to certify the facts in the bill of exceptions taken by the defendants, sufficient to show the propriety, or impropriety, of the instruction given by the court in behalf of the plaintiff.

If the evidence, as stated in the bill of exceptions, was contradictory, the court was not bound to certify the facts or the evidence, further than was sufficient to show the pertinency of the instruction predicated on it.    The ques-

tion suggested, however, does not arise on the record, and it is unnecessary further to consider it.

The remaining error assigned is the ruling of the court, in giving the instruction set out in said exceptions. I do not perceive any substantial error in such instruction, and certainly none of which the *defendants* could justly complain.

I am of opinion, therefore, to affirm the judgment, with costs and damages.

The other judges concurred.

JUDGMENT AFFIRMED.